Daniel Sadeh, Esq.
**HALPER SADEH LLP**
375 Park Avenue, Suite 2607
New York, NY 10152
Telephone: (212) 763-0060
Facsimile: (646) 776-2600
Email: sadeh@halpersadeh.com

*Counsel for Plaintiff*

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| TARA GOLDEN,<br><br>  Plaintiff,<br><br>  v.<br><br>QIAGEN N.V., HÅKAN BJÖRKLUND, STÉPHANE BANCEL, METIN COLPAN, ROSS L. LEVINE, ELAINE MARDIS, LAWRENCE A. ROSEN, and ELIZABETH E. TALLETT,<br><br>  Defendants. | Case No:<br><br>JURY TRIAL DEMANDED |

## COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

Plaintiff Tara Golden ("Plaintiff"), by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and upon information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys.

### NATURE OF THE ACTION

1.      This is an action against QIAGEN N.V. ("QIAGEN" or the "Company") and its Supervisory Board (the "Board" or the "Individual Defendants") for their violations of Sections 14(e), 14(d)(4), and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C.

1

§§ 78n(e), 78n(d)(4), and 78t(a), and Rule 14d-9 promulgated thereunder by the SEC, 17 C.F.R. § 240.14d-9, in connection with the proposed acquisition (the "Proposed Transaction") of QIAGEN by Quebec B.V. ("Quebec"), a wholly-owned subsidiary of Thermo Fisher Scientific Inc. ("Thermo Fisher").

## JURISDICTION AND VENUE

2. The claims asserted herein arise under and pursuant to Sections 14(e), 14(d)(4), and 20(a) of the Exchange Act (15 U.S.C. §§ 78n(e), 78n(d)(4), and 78t(a)) and Rule 14d-9 promulgated thereunder by the SEC (17 C.F.R. § 240.14d-9).

3. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

4. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)) as a substantial portion of the transactions and wrongs complained of herein had an effect in this District, the alleged misstatements entered and the subsequent damages occurred in this District, and the Company conducts business in New York.[1]

5. In connection with the acts, conduct and other wrongs alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

---

[1] For example, between January 2019 and September 2019, the Company reportedly participated in conferences in New York, New York. *See* QIAGEN N.V., *Events and presentations*, https://corporate.qiagen.com/investor-relations/events-and-presentations#events_o=End%20Date,Descending&events_End%20Date=20190101|20191231 (last visited June 5, 2020).

## PARTIES

6. Plaintiff is, and has been at all relevant times hereto, an owner of QIAGEN's common stock.

7. Defendant QIAGEN provides sample to insight solutions that transform biological materials into molecular insights worldwide. The Company is incorporated in The Netherlands with principal executive offices located in The Netherlands. The Company's common stock trades on the New York Stock Exchange under the ticker symbol, "QGEN."

8. Defendant Håkan Björklund ("Björklund") is Chairman of the Board of the Company.

9. Defendant Stéphane Bancel ("Bancel") is a supervisory director of the Board of the Company.

10. Defendant Metin Colpan ("Colpan") is a supervisory director of the Board of the Company.

11. Defendant Ross L. Levine ("Levine") is a supervisory director of the Board of the Company.

12. Defendant Elaine Mardis ("Mardis") is a supervisory director of the Board of the Company.

13. Defendant Lawrence A. Rosen ("Rosen") is a supervisory director of the Board of the Company.

14. Defendant Elizabeth E. Tallett ("Tallett") is a supervisory director of the Board of the Company.

15. Defendants Björklund, Bancel, Colpan, Levine, Mardis, Rosen and Tallett are collectively referred to herein as the "Individual Defendants."

16. Defendants QIAGEN and the Individual Defendants are collectively referred to herein as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

### A. The Proposed Transaction

17. On March 3, 2020, Thermo Fisher and QIAGEN issued a press release announcing that their respective boards of directors unanimously approved Thermo Fisher's proposal to acquire QIAGEN for €39 per share in cash. The press release states that Thermo Fisher would commence a tender offer to acquire all of the ordinary shares of QIAGEN, stating, in pertinent part:

**Thermo Fisher Scientific to Acquire QIAGEN N.V.**

- Expands specialty diagnostics portfolio with attractive molecular diagnostics capabilities, including infectious disease testing
- Complements leading life sciences offering with innovative sample preparation, assay and bioinformatics technologies
- Creates significant value and is expected to be immediately accretive to adjusted earnings per share after close

NEWS PROVIDED BY
**Thermo Fisher Scientific**
Mar 03, 2020, 07:00 ET

WALTHAM, Mass. and VENLO, Netherlands, March 3, 2020 /PRNewswire/ -- Thermo Fisher Scientific Inc. (NYSE: TMO), the world leader in serving science, and QIAGEN N.V. (NYSE: QGEN; Frankfurt Prime Standard: QIA), a leading global provider of molecular diagnostics and sample preparation technologies, today announced that their boards of directors, as well as the managing board of QIAGEN N.V., have unanimously approved Thermo Fisher's proposal to acquire QIAGEN for €39 per share in cash. The offer price represents a premium of approximately 23% to the closing price of QIAGEN's common stock on the Frankfurt Prime Standard on March 2, 2020, the last trading day prior to the announcement of the transaction. Thermo Fisher will commence a tender offer to acquire all of the ordinary shares of QIAGEN.

The transaction values QIAGEN at approximately $11.5 billion at current exchange rates, which includes the assumption of approximately $1.4 billion of net debt.

* * *

QIAGEN is a leading provider of life science and molecular diagnostic solutions and employs approximately 5,100 people at 35 locations in more than 25 countries. The company generated 2019 revenue of $1.53 billion. Its sample preparation technologies are used to extract, isolate and purify DNA, RNA and proteins from a wide range of biological samples. The company's assay technologies are then used to amplify and enrich these biomolecules to make them readily accessible for analysis. In addition, QIAGEN's instruments can be used to automate these workflows, while its bioinformatics systems provide customers with relevant, actionable insights.

"Our vision at QIAGEN has always been to make improvements in life possible with our differentiated Sample to Insight molecular testing solutions," said Thierry Bernard, interim chief executive officer of QIAGEN N.V. and senior vice president, head of the molecular diagnostics business area. "This strategic step with Thermo Fisher will enable us to enter a promising new era and will give our employees the opportunity to have an even greater impact. The combination is designed to deliver significant cash value to our shareholders, while enabling us to accelerate the expansion of our solutions to provide customers worldwide with breakthroughs that advance our knowledge about the science of life and improve health outcomes."

* * *

**Financing and Approvals**

The transaction, which is expected to be completed in the first half of 2021, is subject to the satisfaction of customary closing conditions, including the receipt of applicable regulatory approvals, the adoption of certain resolutions relating to the transaction at an Extraordinary General Meeting of QIAGEN's shareholders, and completion of the tender offer.

Thermo Fisher has obtained committed bridge financing. Permanent funding is expected to come from cash on hand and the issuance of new debt. The transaction is not subject to any financing condition.

**Advisors**

J.P. Morgan Securities LLC and Morgan Stanley & Co. LLC are serving as financial advisors to Thermo Fisher, and Wachtell, Lipton, Rosen & Katz is serving as legal counsel. For QIAGEN, Goldman Sachs International is serving as lead financial advisor and Barclays Bank PLC is serving as financial advisor, while De Brauw Blackstone Westbroek NV, Linklaters LLP and Mintz, Levin, Cohn, Ferris, Glovsky and Popeo P.C. are serving as legal counsel.

18. On May 18, 2020, QIAGEN filed a Schedule 14D-9 Solicitation/Recommendation

Statement under Section 14(d)(4) of the Exchange Act (the "Solicitation Statement") with the SEC in connection with the Proposed Transaction, including Exhibit (a)(2), the Joint Reasoned Statement and Position Statement.

### B. The Solicitation Statement Contains Materially False and Misleading Statements and Omissions

19. The Solicitation Statement, which recommends that QIAGEN shareholders tender their shares to Quebec in connection with the Proposed Transaction, omits and/or misrepresents material information concerning: (i) the Company's financial projections; (ii) the financial analyses performed by QIAGEN's financial advisors, Barclays Bank PLC ("Barclays") and Goldman Sachs International ("Goldman"), in connection with their fairness opinions; (iii) the sales process leading up to the Proposed Transaction; and (iv) potential conflicts of interest involving Company insiders.

20. The omission of the material information (referenced below) renders the following sections of the Solicitation Statement false and misleading, among others: (i) Background to the Offer; (ii) RECOMMENDATION; (iii) Opinions of QIAGEN's Financial Advisors; and (iv) Certain QIAGEN Management Projections.

21. The tender offer in connection with the Proposed Transaction is set to expire on July 27, 2020 (the "Expiration Date"). It is imperative that the material information that was omitted from the Solicitation Statement be disclosed to the Company's shareholders prior to the Expiration Date to enable them to make an informed decision as to whether to tender their shares. Plaintiff may seek to enjoin Defendants from closing the tender offer or the Proposed Transaction unless and until the material misstatements and omissions (referenced below) are remedied. In the event the Proposed Transaction is consummated, Plaintiff may seek to recover damages resulting from Defendants' misconduct.

### 1. Material Omissions Concerning QIAGEN's Financial Projections

22. The Solicitation Statement omits material information concerning QIAGEN's financial projections.

23. The Solicitation Statement provides that "QIAGEN provided the Management Projections to Goldman Sachs and Barclays[, who] relied on the Management Projections in performing their financial analyses[.]"[2]

24. With respect to the Management Projections, the Solicitation Statement, however, fails to disclose all line items used to calculate Adjusted EBITDA and net sales.

25. The disclosure of this projected financial information is material because it would provide QIAGEN shareholders with a basis to project the future financial performance of QIAGEN and would allow shareholders to better understand the financial analyses performed by the Company's financial advisors in support of their fairness opinions. Shareholders cannot hope to replicate management's inside view of the future prospects of the Company. Without such information, which is uniquely possessed by the Company and its financial advisors, the Company's shareholders are unable to determine how much weight, if any, to place on the Company's financial advisors' fairness opinions in determining whether to tender their shares in connection with the Proposed Transaction.

26. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to QIAGEN shareholders.

### 2. Material Omissions Concerning the Financial Advisors' Analyses

27. In connection with the Proposed Transaction, the Solicitation Statement omits

---

[2] The Solicitation Statement refers to the "Management Projections" as "financial projections of QIAGEN previously prepared by management of QIAGEN[.]"

7

material information concerning analyses performed by Barclays and Goldman.

28. The valuation methods, underlying assumptions, and key inputs used by Barclays and Goldman in rendering their purported fairness opinions must be fairly disclosed to QIAGEN shareholders. The description of Barclays' and Goldman's fairness opinions and analyses, however, fail to include key inputs and assumptions underlying those analyses. Without the information described below, QIAGEN shareholders are unable to fully understand the fairness opinions and analyses, and are thus unable to determine how much weight, if any, to place on them in determining whether to tender their shares in connection with the Proposed Transaction. The following omitted information, if disclosed, would significantly alter the total mix of information available to QIAGEN shareholders.

   a. **Barclays' Financial Analyses**

29. The Solicitation Statement fails to disclose the following concerning Barclays' "*Selected Precedent Transaction Analysis*": (1) the individual multiples and financial metrics of each transaction selected by Barclays in its analysis; (2) Barclays' complete basis for selecting the range of 18.0x to 22.0x Enterprise Value/LTM EBITDA multiples; (3) the range of illustrative enterprise values for QIAGEN; (4) the amount of QIAGEN's net debt; and (5) the number of fully diluted outstanding QIAGEN Shares.

30. The Solicitation Statement fails to disclose the following concerning Barclays' "*Illustrative Discounted Cash Flow Analysis*": (1) the individual inputs and assumptions underlying the (i) discount rates ranging from 7.5% to 8.5%; and (ii) range of terminal value exit multiples ranging from 16.0x to 20.0x Enterprise Value/LTM EBITDA to the projected 2023 EBITDA; (2) the range of terminal values for QIAGEN; (3) the amount of QIAGEN's net debt; and (4) the number of fully diluted QIAGEN Shares.

31. With respect to Barclays' "*Illustrative Present Value of Future Share Price Analysis*[,]" the Solicitation Statement fails to disclose the individual inputs and assumptions underlying the (i) next-twelve-months adjusted P/E multiples ranging from 22.0x to 26.0x, and (ii) range of illustrative discount rates of 9.0% to 10.0%.

32. The Solicitation Statement fails to disclose the following concerning Barclays' "*Illustrative Selected Comparable Company Analysis*": (1) the individual multiples and financial metrics of each company selected by Barclays in its analysis; and (2) the individual inputs and assumptions underlying the (i) range of 16.0x to 21.0x multiples of EV/Adjusted EBITDA; and (ii) range of 22.0x to 26.0x multiples of P/E for QIAGEN.

### b. Goldman's Financial Analyses

33. The Solicitation Statement fails to disclose the following concerning Goldman's "*Selected Precedent Transaction Analysis*": (1) the individual multiples and financial metrics of each company/transaction selected by Goldman in its analysis; (2) the individual inputs and assumptions underlying the range of 18.0x to 22.0x Enterprise Value/LTM EBITDA multiples; (3) the amount of QIAGEN's net debt; (4) the range of illustrative equity values for QIAGEN; and (5) the applicable number of fully diluted outstanding QIAGEN Shares.

34. The Solicitation Statement fails to disclose the following concerning Goldman's "*Illustrative Discounted Cash Flow Analysis*": (1) the individual inputs and assumptions underlying the (i) discount rates ranging from 6.5% to 7.5%, and (ii) terminal value exit multiples ranging from 16.0x to 20.0x Enterprise Value LTM/EBITDA; (2) the range of illustrative terminal values for QIAGEN; (3) the ranges of illustrative enterprise values for QIAGEN; (4) the amount of QIAGEN's net debt; and (5) the number of fully diluted outstanding QIAGEN Shares.

35. With respect to Goldman's "*Illustrative Present Value of Future Share Price

9

*Analysis*[,]" the Solicitation Statement fails to disclose the individual inputs and assumptions underlying the (i) next-twelve-months adjusted P/E multiples ranging from 22.0x to 26.0x, and (ii) illustrative discount rate of 7.4%.

36. With respect to Goldman's "*Premia Analysis*[,]" the Solicitation Statement fails to disclose the individual premiums paid in each transaction utilized by Goldman in its analysis.

37. With respect to Goldman's "*Illustrative Selected Comparable Company Analysis*[,]" the Solicitation Statement fails to disclose the individual multiples and financial metrics of each company selected by Goldman in its analysis.

### 3. Material Omissions Concerning the Sales Process Leading up to the Proposed Transaction

38. The Solicitation Statement omits material information concerning the sales process leading up to the Proposed Transaction.

39. The Solicitation Statement provides that QIAGEN entered into non-disclosure agreements with various parties, including Thermo Fisher, Party C, and Party D that contained standstill provisions which would "terminate automatically in certain circumstances."

40. The Solicitation Statement, however, fails to disclose whether the Company's non-disclosure agreements contained standstill provisions with "don't ask, don't waive" provisions (including their time of enforcement) that would preclude interested parties from making superior offers for the Company and under what circumstances such standstills would automatically terminate.

41. Without this information, QIAGEN shareholders may have the mistaken belief that potential buyers are or were permitted to submit superior proposals for QIAGEN, when in fact they are or were contractually prohibited from doing so. This information is material because a reasonable QIAGEN shareholder would want to know, prior to tendering their shares in connection

with the Proposed Transaction, whether other potential buyers are or were foreclosed from submitting a superior proposal.

42. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to QIAGEN shareholders.

**4. Material Omissions Concerning Company Insiders' Potential Conflicts of Interest**

43. The Solicitation Statement omits material information concerning potential conflicts of interest involving Company insiders.

44. In the March 3, 2020 press release announcing the Proposed Transaction, the Chairman, President and Chief Executive Officer of Thermo Fisher stated that "[w]e look forward to welcoming QIAGEN's employees to Thermo Fisher."

45. The Solicitation Statement also mentions that on November 18, 2019, "members of QIAGEN's management presented to Thermo Fisher's management team information concerning, among other things, QIAGEN's internal management structure, portfolio and business strategy."

46. The Solicitation Statement, however, fails to disclose the details of all employment-related and compensation-related discussions and negotiations concerning the Company's officers and directors, including the parties to such communications, when they occurred, and the specific content discussed/communicated.

47. The Solicitation Statement fails to disclose to what extent Thermo Fisher's proposals or indications of interest included management retention or consulting arrangements in the combined company.

48. Any communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to shareholders. This information is necessary for shareholders to understand potential conflicts of interest of management and the

11

Board. Such information may illuminate the motivations that would prevent fiduciaries from acting solely in the best interests of the Company's shareholders.

49. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to QIAGEN shareholders.

## COUNT I
### For Violations of Section 14(e) of the Exchange Act
### Against All Defendants

50. Plaintiff repeats and re-alleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

51. Section 14(e) of the Exchange Act states, in relevant part:

It shall be unlawful for any person to make any untrue statement of a material fact or omit to state any material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading . . . in connection with any tender offer or request or invitation for tenders[.]

52. During the relevant period, Defendants, individually and in concert, directly or indirectly, disseminated or approved the false and misleading Solicitation Statement specified above, which failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, in violation of Section 14(e) of the Exchange Act.

53. Each of the Individual Defendants, by virtue of their positions within the Company as officers and/or directors, were aware of materially false and/or misleading and/or omitted information but failed to disclose such information, in violation of Section 14(e) of the Exchange Act. Defendants, by use of the mails and means and instrumentalities of interstate commerce, solicited and/or permitted the use of their names to file and disseminate the Solicitation Statement with respect to the Proposed Transaction.

54. The false and misleading statements and omissions in the Solicitation Statement are

material in that a reasonable shareholder would consider them important in deciding whether to tender their shares in connection with the Proposed Transaction.

55. Defendants acted knowingly or with deliberate recklessness in filing or causing the filing of the materially false and misleading Solicitation Statement.

56. By reason of the foregoing, Defendants violated Section 14(e) of the Exchange Act.

57. Because of the false and misleading statements in the Solicitation Statement, Plaintiff is threatened with irreparable harm.

## COUNT II
### For Violations of Section 14(d)(4) of the Exchange Act and Rule 14d-9 Promulgated Thereunder
### Against All Defendants

58. Plaintiff repeats and re-alleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

59. Defendants caused the Solicitation Statement to be issued with the intent to solicit shareholder support for the Proposed Transaction.

60. Section 14(d)(4) of the Exchange Act and SEC Rule 14d-9 promulgated thereunder require full and complete disclosure in connection with tender offers. Specifically, Section 14(d)(4) states, in relevant part:

> Any solicitation or recommendation to the holders of such a security to accept or reject a tender offer or request or invitation for tenders shall be made in accordance with such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

61. SEC Rule 14d-9(d), adopted to implement Section 14(d)(4) of the Exchange Act, states, in relevant part:

> Any solicitation or recommendation to holders of a class of securities referred to in section 14(d)(1) of the Act with respect to a tender offer for such securities shall include the name of the person making such solicitation or recommendation and

13

the information required by Items 1 through 8 of Schedule 14D-9 (§ 240.14d-101) or a fair and adequate summary thereof[.]

62. In accordance with SEC Rule 14d-9, Item 8 of Schedule 14D-9 requires that a company:

Furnish such additional material information, if any, as may be necessary to make the required statements, in light of the circumstances under which they are made, not materially misleading.

63. During the relevant period, Defendants, individually and in concert, directly or indirectly, disseminated or approved the false and misleading Solicitation Statement specified above, which failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, in violation of Section 14(d)(4) of the Exchange Act and SEC Rule 14d-9.

64. Each of the Individual Defendants, by virtue of their positions within the Company as officers and/or directors, were aware of materially false and/or misleading and/or omitted information but failed to disclose such information, in violation of Section 14(d)(4) of the Exchange Act and SEC Rule 14d-9. Defendants, by use of the mails and means and instrumentalities of interstate commerce, solicited and/or permitted the use of their names to file and disseminate the Solicitation Statement with respect to the Proposed Transaction.

65. Defendants acted knowingly or with deliberate recklessness in filing the materially false and misleading Solicitation Statement which omitted material information.

66. The false and misleading statements and omissions in the Solicitation Statement are material in that a reasonable shareholder would consider them important in deciding whether to tender their shares in connection with the Proposed Transaction.

## COUNT III
### Violations of Section 20(a) of the Exchange Act
### Against the Individual Defendants

67. Plaintiff repeats and re-alleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

68. The Individual Defendants acted as control persons of the Company within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their senior positions as officers and/or directors of the Company and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Solicitation Statement filed with the SEC, they had the power to and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the false and misleading Solicitation Statement.

69. Each of the Individual Defendants was provided with or had unlimited access to copies of the Solicitation Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected. As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to the Solicitation Statement, and to correct promptly any public statements issued by the Company which were or had become materially false or misleading.

70. In particular, each of the Individual Defendants had direct and supervisory involvement in the operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Individual Defendants were provided with or had unlimited access to copies of the Solicitation Statement and had the ability to prevent the issuance of the statements or to cause the statements to be corrected. The Solicitation Statement at issue contains

the unanimous recommendation of the Individual Defendants to tender their shares pursuant to the Proposed Transaction. Thus, the Individual Defendants were directly involved in the making of the Solicitation Statement.

71.  In addition, as the Solicitation Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Proposed Transaction. The Solicitation Statement purports to describe the various issues and information that they reviewed and considered—descriptions which had input from the Individual Defendants.

72.  By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

73.  As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Sections 14(e), 14(d)(4), and Rule 14d-9 promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' conduct, the Company's shareholders will be irreparably harmed.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.  Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and the tender offer in connection with the Proposed Transaction, unless and until Defendants disclose and disseminate the material information identified above to the Company's shareholders;

B. In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding Plaintiff rescissory damages;

C. Declaring that Defendants violated Sections 14(e), 14(d)(4), and 20(a) of the Exchange Act, and Rule 14d-9 promulgated thereunder;

D. Awarding Plaintiff reasonable costs and expenses incurred in this action, including counsel fees and expenses and expert fees; and

E. Granting such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: June 5, 2020

Respectfully submitted,

**HALPER SADEH LLP**

By: /s/ Daniel Sadeh
Daniel Sadeh, Esq.
Zachary Halper, Esq. (to be admitted *pro hac vice*)
375 Park Avenue, Suite 2607
New York, NY 10152
Telephone: (212) 763-0060
Facsimile: (646) 776-2600
Email: sadeh@halpersadeh.com
          zhalper@halpersadeh.com

*Counsel for Plaintiff*